# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **CAVALIERS OPERATING COMPANY, LLC,** *et al.* | : | **Case Nos. 07CV2317 and 08CV240** |
| | : | |
| Plaintiffs, | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| v. | : | |
| | : | |
| **TICKETMASTER,** *et al.* | : | **OPINION & ORDER** |
| | : | |
| Defendants. | : | |

There are two inter-related matters simultaneously pending before the Court and ripe for adjudication. First, Ticketmaster-Indiana, Ticketmaster, and Ticketmaster, LLC's (collectively, "Ticketmaster") *Motion to Dismiss Counts I Through V of the Amended Complaint* in case number 07cv2317 (ECF Doc. 25, Case No. 07cv2317), and Ticketmaster's *Motion to Dismiss Counterclaims* in case number 08cv240 (ECF Doc. 105, Case No. 08cv240) are now pending before the Court. The Amended Complaint at issue in case number 07cv2317 and the Counterclaims in case number 08cv240 were filed by Cavaliers Operating Company, LLC's ("the Cavaliers") and Flash Seats, LLC ("Flash Seats") (collectively, "the Cavaliers/Flash Seats"),[1] and assert essentially the same causes of action against Ticketmaster. Ticketmaster now seeks dismissal of the claims and counterclaims alleged by the Cavaliers/Flash Seats, in particular the alleged violations of federal and state antitrust laws. (*See e.g.*, Amended Complaint for Antitrust

---

[1] By referring to the Cavaliers and Flash Seats collectively, the Court does not mean to imply that is interpreting their claims in lock-step. In other words, the antitrust claims of one will not automatically fall or succeed with the claims of the other.

1

*Violations and For Declaratory and Injunctive Relief*, ECF Doc. 18, Case No. 07cv2317) ("*Amended Complaint*"). These motions have been fully briefed and are ripe for adjudication.

In addition, the Court conducted a bench trial with respect to the liability issues in connection with Ticketmaster's breach of contract claims in case number 08cv240 and, on August 13, 2008, took the matter under advisement.

The Court has reached certain conclusions with respect to both the bench trial and the motions to dismiss. In sum, the Court finds in favor of Ticketmaster with respect to the breach of contract claims litigated at the bench trial. Further, the Court converts Ticketmaster's motions to dismiss to motions for summary judgment, and, thus, **TERMS** the motions to dismiss. The Court will issue a separate order detailing its full findings of fact and conclusions of law on the contract claims. Ticketmaster's challenge to the Cavaliers/Flash Seats' antitrust claims and counterclaims will be considered pursuant to the procedure described below.

## I. BACKGROUND

### A. THE PARTIES AND THE LICENSED USER AGREEMENT (LUA)

Ticketmaster is in the business of selling tickets to events at large venues and on behalf of sports teams and organizations throughout the nation. In the course of its business, Ticketmaster regularly enters into contracts with venues and organizations to handle ticketing for certain entertainment and sporting events. One such contract is at issue in these cases. In 1993, Ticketmaster and the Cavaliers entered into a contract for Ticketmaster to act as the exclusive primary ticketing[2] provider for all events at the arena owned by the Cavaliers, now located in

---

[2] "Primary ticketing" involves the initial sale of event tickets to consumers. The seller is the entity producing the event and the buyer is the person or entity who needs a ticket to attend the event. Ticketmaster, and other primary ticketing providers, sell tickets on behalf of the producer of the event. The Cavaliers/Flash

downtown Cleveland, Ohio and known as Quicken Loans Arena ("The Q").[3]  Subsequently, the contract, or "Licensed User Agreement" ("LUA"), was amended and extended several times such that it will remain in effect until July of 2010.[4]

The Cavaliers operate the "Cleveland Cavaliers," a professional basketball team in the National Basketball Association ("NBA"). As part of this business, the Cavaliers sell season tickets to Cleveland Cavaliers basketball games. The parties do not dispute that the LUA permitted the Cavaliers to sell season tickets directly to consumers. In 2006, however, the Cavaliers began using the products and services of its related company, Flash Seats, LLC, for "secondary ticketing,"[5] *i.e.*, to allow season ticket holders to resell single-game tickets to particular games. As a result, the Cavaliers season ticket holders may use the Cavaliers web-site to resell single-

---

Seats specifically define the "primary ticketing" market in the Amended Complaint, (*Amended Complaint,* ECF Doc. 18, Case No. 07cv2317, at ¶ 17).

[3] Quicken Loans Arena was formerly known as "The Arena at Gateway" and "Gund Arena." The Cavaliers began playing games there in 1994. In 1993, the Cavaliers' arena was the Richfield Coliseum in Richfield, Ohio.

[4] The LUA was amended by agreement of the parties in 1998, 2000, 2003, and 2005. These amendments, along with the original agreement, constitute the "LUA" as it is referenced in this Opinion & Order.

[5] "Secondary ticketing" involves the resale of tickets originally purchased from the primary ticketing provider. Secondary ticketing has always been part of the ticketing marketplace, originally in the form of street vendors ("scalpers") reselling tickets outside the event itself. It has a new dimension in the internet era, however, and sports teams and venues are now making an effort to use websites and software to capitalize on what was formerly an underground market. *See generally* Anthony J. Dreyer and Mitchell P. Schwartz, *Whose Game Is It Anyway: Sport Teams' Right to Restrict (and Control) Ticket Resale* 17 Fordham Intell. Prop. Media & Ent. L.J. 753, 754 (2007). It is this particular sub-category of secondary ticketing that is at issue in this case. The Cavaliers/Flash Seats' *Amended Complaint* specifically excludes "ticketing brokers" from the definition of the secondary ticketing market. (*Amended Complaint,* ECF Doc. 18, Case No. 07cv2317, at ¶ 24.)

3

game tickets from their season ticket package via Flash Seats' secondary ticketing products and services.[6] In addition, the general public may use the Cavaliers web-site to purchase single-game tickets through Ticketmaster's primary ticketing products and services. Both of the cases captioned above – 07cv2317 and 08cv240 -- arose out of the relationship between the Cavaliers and Flash Seats that allows season ticket holders to resell single-game tickets from their season ticket package using Flash Seats secondary ticketing products and services instead of Ticketmaster's secondary ticketing products and services.

### B. PROCEDURAL HISTORY OF THE CONSOLIDATED CASES

There are two consolidated cases before the Court: the "Breach of Contract Case, 08cv240," which was originally filed by Ticketmaster in the United States District Court for the Central District of California, and the "Antitrust Case, 07cv2317," which was originally filed by the Cavaliers/Flash Seats in this Court.

#### 1. Ticketmaster's Breach of Contract Case – 08cv240

##### i. Procedural History

Ticketmaster originally filed suit against the Cavaliers/Flash Seats in the Central District of California on July 17, 2007, raising several claims related to the LUA between the Cavaliers and Ticketmaster. Ticketmaster alleged that the Cavaliers breached the exclusivity provisions of the LUA via the use of Flash Seats' products and/or services. (*See Complaint*, ECF Doc. 1, Case No. 08cv240.) On August 21, 2008, Ticketmaster filed an amended complaint. (*First Amended Complaint*, ECF Doc. 16, Case No. 08cv240.)

---

[6] The Cavaliers web-site is available at: Cleveland Cavaliers, http://www.nba.com/cavaliers/tickets/index.html (last visited Sept. 30, 2008).

4

Briefly, the dispute in the Breach of Contract case is as follows. The parties agree that Ticketmaster has the exclusive right to provide primary ticketing services with respect to certain single-game tickets described in the LUA; they dispute whether the LUA gives Ticketmaster exclusive rights in the secondary ticketing market. In other words, it is undisputed that Ticketmaster has the exclusive right to sell single-game tickets to the public, but the Cavaliers contend that the LUA does not prohibit the Cavaliers from contracting with another company, Flash Seats, to facilitate the use of Flash Seats' technology by Cavaliers season ticket holders to resell single-game tickets via the Cavaliers' web-site.

In September of 2007, while the Breach of Contract Case was still pending in the Central District of California, the Cavaliers filed a motion to dismiss or, in the alternative, to transfer, on various grounds, including an asserted lack of jurisdiction. (ECF Doc. 48, Case No. 08cv240.) Judge Audrey B. Collins of the Central District of California issued an Order on January 11, 2008 denying the motion to dismiss for lack of subject matter jurisdiction and transferring the Breach of Contract Case to this Court (ECF Doc. 94, Case No. 08cv240), where the Antitrust Case was already pending. The Breach of Contract Case was thus transferred by random draw to Judge James Gwin of the Northern District of Ohio, and then re-assigned to the undersigned as related to the Antitrust Case, Case No. 07cv2317. (ECF Doc. 103, Case No. 08cv240.)[7] The *Second Amended Complaint* is the operative complaint presently in the Breach of Contract Case.

---

[7] Although at the time of the transfer from the Central District of California, the Cavaliers/Flash Seats' motion to dismiss the trademark claims in the *First Amended Complaint* was still pending, on May 29, 2008, by agreement with the Cavaliers and Flash Seats, and with the Court's permission, Ticketmaster filed a *Second Amended Complaint* dismissing its trademark claims.

5

The Cavaliers/Flash Seats filed an *Answer and Counterclaim* in the Breach of Contract Case on February 4, 2008, (ECF Doc. 99, Case No. 08cv240), and an *Answer and Amended Counterclaim* two days later (ECF Doc. 102, Case No. 08cv240). The counterclaims asserted by the Cavaliers/Flash Seats in the Breach of Contract Case essentially duplicate the claims they assert in their Complaint in the Antitrust Case discussed below. On February 26, 2008, Ticketmaster filed the motion to dismiss the Cavaliers/Flash Seats' counterclaims that is now before the Court. (ECF Doc. 105, Case No. 08cv240.)

### 2. The Cavaliers/Flash Seats' Antitrust Case – 07cv2317

On July 30, 2007, the Cavaliers/Flash Seats filed suit in the United States District Court for the Northern District of Ohio, raising claims for violations of antitrust laws and seeking declaratory and injunctive relief in connection with Ticketmaster's contention that the LUA precludes the Cavaliers from using Flash Seats products and services ("the Antitrust Case" or "Case No. 07cv2317"). (*Complaint*, ECF Doc. 1, Case No. 07cv2317.) Subsequently, the Cavaliers/Flash Seats filed the *Amended Complaint for Antitrust Violations and for Declaratory and Injunctive Relief* ("*Amended Complaint*") (ECF Doc. 18, Case No. 07cv2317) that is currently in force. As described above, the Cavaliers/Flash Seats filed the Antitrust Case in this Court about two weeks after Ticketmaster filed the Breach of Contract Case in the Central District of California, and the Cavaliers/Flash Seats' counterclaims in the Breach of Contract case mirror their claims in the Antitrust Case. Consequently, Ticketmaster's *Motion to Dismiss Counts I Through V of the Amended Complaint*, filed March 20, 2008, (ECF Doc. 25, Case No. 07cv2317) presents

almost the same arguments as Ticketmaster's *Motion to Dismiss Counterclaims* in the Breach of Contract Case, filed February 26, 2008 (ECF Doc. 105, Case No. 08cv240).[8]

The essence of the Cavaliers/Flash Seats' antitrust allegations in the *Amended Complaint* is that Ticketmaster dominates the market for primary ticketing and is intentionally engaging in anticompetitive behavior in an effort to establish monopoly power in the secondary ticketing market. In connection with this theory, the Cavaliers/Flash Seats assert several antitrust claims, tortious interference claims, and request declaratory judgment.

In its motion to dismiss, Ticketmaster argues that the allegations in the *Amended Complaint* are insufficient to support any of the Cavaliers/Flash Seats' claims under the Rule 12(b)(6) standard. Specifically, Ticketmaster is seeking dismissal of the following claims:

- Count I – Exclusive Dealing: The Cavaliers/Flash Seats allege that Ticketmaster engaged in exclusive dealing in violation of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2,[9]

---

[8] The difference between Ticketmaster's motion to dismiss the Cavaliers/Flash Seats' counterclaims in the Breach of Contract Case and Ticketmaster's motion to dismiss the claims in the Antitrust Case relates to the Cavaliers/Flash Seats' counterclaims and claims for declaratory judgment regarding the interpretation of section 5(a) of the LUA. (*See* ECF Doc. 105, Case No. 08cv240; ECF Doc. 25, Case No. 07cv2317.) Ticketmaster's motion to dismiss the counterclaims in the Breach of Contract Case seeks dismissal of all seven counterclaims, including the claims for declaratory judgment, while the motion to dismiss filed in the Antitrust Case only relates to the first five claims for antitrust violations under federal and Ohio law and for tortious interference with contract. Ticketmaster argues that the declaratory judgment counterclaims are superfluous because they are inherently resolved along with the claims for affirmative relief. (ECF Doc. 105-2, Case No. 08cv240 at 20-22.) The Cavaliers/Flash Seats argue that the declaratory judgment counterclaims are not superfluous because they are not co-extensive with the contract claims. (ECF Doc. 34, Case No. 07cv2317 at 36-39.)

[9] Section 1 of the Sherman Act states:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every

7

and § 3 of the Clayton Act, 15 U.S.C. § 14.[10] (*Amended Complaint*, ECF Doc. 18, Case No. 07cv2317, at 16-17.)

---

[10]

> person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 1. Section 2 of the Sherman Act states:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 2.

Section 3 of the Clayton Act states:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

15 U.S.C. § 14.

8

- Count II – Tying: The Cavaliers/Flash Seats allege that Ticketmaster illegally tied the licensing of software and use of its primary ticketing products and services to the use of its secondary ticketing products and services in violation of § 1 of the Sherman Act, 15 U.S.C. §§ 1. (*Amended Complaint*, ECF Doc. 18, Case No. 07cv2317, at 17.) The Cavaliers/Flash Seats characterize Ticketmaster's primary ticketing licensing, products, and services as the "tying product," and "Team Exchange," Ticketmaster's secondary ticketing product/service, as the "tied product." (*Id*.) The Cavaliers/Flash Seats also allege Ticketmaster's conduct with respect to Team Exchange has an anticompetitive effect in violation of § 3 of the Clayton Act, 15 U.S.C. § 14. (*Amended Complaint*, ECF Doc. 18, Case No. 07cv2317, at 18-19.)

- Count III – Attempted Monopolization: The Cavaliers/Flash Seats allege that Ticketmaster is attempting to monopolize the market for secondary ticketing in violation of § 2 of the Sherman Act, 15 U.S.C. § 2. (*Amended Complaint*, ECF Doc. 18, Case No. 07cv2317, at 19.) The Cavaliers/Flash Seats § 2 monopolization claim is premised on the allegation that Ticketmaster has substantial market power in the primary ticketing market, and intends to use that power to illegally monopolize the secondary ticketing market. (*Id*.)

- Count IV – Violation of Ohio's Valentine Act: For their final antitrust claim, the Cavaliers/Flash Seats allege that Ticketmaster's allegedly anticompetitive and exclusionary conduct violates the State of Ohio's antitrust statute, the Valentine Act, O.R.C. § 1331.01 *et seq*. (*Amended Complaint*, ECF Doc. 18, Case No. 07cv2317, at 20.) The Ohio Valentine Act is modeled after the Federal Sherman Act,[11] and the Cavaliers/Flash Seats allege that Ticketmaster's actions violate both statutes. (*Id*.)

- Count V – Tortious Interference: The Cavaliers/Flash Seats allege that Ticketmaster is interfering with the business relationship between the Cavaliers and Flash Seats by intentionally misinterpreting the LUA to prohibit the Cavaliers from using Flash Seats to provide secondary ticketing services. (*Amended Complaint*, ECF Doc. 18, Case No.

---

[11] See, *e.g.*, O.R.C. § 1331.02:

> No person shall issue or own trust certificates, and no person shall enter into a combination, contract, or agreement, the purpose and effect of which is to place the management or control of such combination, or the product or service thereof, in the hands of a trustee with the intent to limit or fix the price or lessen the production or sale of an article or service of commerce, use, or consumption, to prevent, restrict, or diminish the manufacture or output of such article or service, or refuse to buy from, sell to, or trade with any person because such person appears on a blacklist issued by, or is being boycotted by, any foreign corporate or governmental entity.

9

>  07cv2317, at 21.) The Cavaliers/Flash Seats claim that Ticketmaster's attempt to force the Cavaliers to use Ticketmaster's "Team Exchange" product for secondary ticketing instead of Flash Seats' competing products and services constitutes tortious interference. (*Id.*)

- Count VI & VII – Declaratory Judgment: In the Breach of Contract Case, Ticketmaster claims that § 5(a) of the LUA prohibits the Cavaliers from using Flash Seats for secondary ticketing. The Cavaliers contests this interpretation of § 5(a). The Cavaliers seek declaratory judgment regarding its rights under § 5(a) of the LUA, *i.e.*, an Order stating that the Cavaliers are not violating § 5(a) through their use of Flash Seats. (*Amended Complaint*, ECF Doc. 18, Case No. 07cv2317, at 22.) Count VII is similar to Count VI, but broader in that it is asserted by both the Cavaliers and Flash Seats and is not limited to the interpretation of § 5(a) of the LUA. The Cavaliers/Flash Seats seek a declaratory judgment that the Cavaliers are not violating the LUA in any respect, and that Flash Seats is not tortiously interfering with Ticketmaster's relationships with the Cavaliers or other NBA teams. (*Amended Complaint*, ECF Doc. 18, Case No. 07cv2317, at 23.)

### 3. The Procedure Established at the Joint Case Management Conference

At the joint Case Management Conference on April 2, 2008, the parties agreed that the Court's conclusions regarding the scope of the LUA could materially affect its ruling on the motion to dismiss the antitrust claims. Specifically, the parties agreed that if the Court were to conclude that the LUA did not grant Ticketmaster the right to act as the Cavaliers' exclusive ticketing provider in both the primary and secondary ticketing markets, an antitrust claim premised on the existence of that exclusivity could not stand. While Flash Seats was not prepared to concede that the absence of an exclusive contract would moot <u>all</u> of its antitrust claims, it did agree that such a conclusion by this Court would materially affect the viability of its antitrust complaint. Similarly, since several of the antitrust claims are premised on claims that Ticketmaster is misinterpreting the LUA and has initiated litigation based on that misinterpretation, a decision in favor of Ticketmaster with respect to its interpretation of the LUA would undercut those particular assertions. Given the threshold and potentially outcome-determinative nature of the issues presented in the Breach of Contract case, the Court scheduled a bench trial in that matter to

10

commence on July 10, 2008. (ECF Doc. 117, Case No. 08cv240.)[12]  By agreement, the Court bifurcated the liability and damages portion of that action.  The bench trial went forward with the presentation of proofs on July 10-11, 2008, and the Court heard closing argument on August 13, 2008.  The parties thereafter submitted proposed findings of fact and conclusions of law, and the Court took the matter under advisement.

## II.  PROCEDURAL AND SUBSTANTIVE RULINGS

As the procedural history of this case indicates, the facts and claims pertinent to Ticketmaster's Breach of Contract Case and the Cavaliers/Flash Seats' Antitrust Case are closely intertwined.  Two matters are now coming ripe simultaneously: (1) the Court will soon issue findings of fact and conclusions of law in connection with the bench trial in the Breach of Contract case, and (2) the Court has spent a considerable amount of time analyzing the issues, both procedural and substantive, raised by Ticketmaster's motions to dismiss the Cavaliers/Flash Seats' claims and counterclaims.  The Court is thus in the awkward position of considering the same set of factual circumstances at opposite ends of the litigation process.  That is, the Court is poised to make factual findings in the context of the Breach of Contract Case bench trial which relate directly to the allegations advanced in the *Amended Complaint* in the Antitrust Case.  For purposes of the motions to dismiss the antitrust claims and counterclaims, the Court is bound to accept the allegations in the *Amended Complaint* as true (to the extent they assert a plausible entitlement to relief).  *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  At the same time, the Court is about to issue its ruling with respect to the bench trial in the Breach of Contract Case and make

---

[12]  The LUA contains a jury trial waiver.

11

factual determinations directly related to, and, in some instances, potentially inconsistent with, these very same allegations.

The parties' briefs in connection with the motions to dismiss the antitrust claims and counterclaims do not address this issue. The Court, however, finds this procedural posture untenable.[13] It is simply impossible for the Court to divorce what it knows and finds from the evidence presented at the bench trial in the Breach of Contract Case from the allegations in the *Amended Complaint* in the Antitrust Case. With this in mind, the Court issues the following rulings and instructions governing these cases going forward.

In sum, the cases will proceed in three chronological stages:

(1)  The Court will now issue its summary ruling in connection with the bench trial in the Breach of Contract Case, and will set a schedule for resolution of the remaining issues in that case;

(2)  The Court will issue an opinion setting forth its findings of fact and conclusions of law and fully articulating its reasoning in connection with its ruling in step 1;

(3)  The Court hereby converts Ticketmaster's Rule 12(b)(6) motion to a Rule 56 motion. Following the issuance of the opinion described in step 2, the Court will provide the parties with a brief opportunity to conduct limited discovery and make additional factual submissions based on that limited discovery.

Some explanation of each step is necessary in the interest of clarity.

**Step 1.        Ruling:  The Cavaliers Breached the Exclusivity Clause of the LUA**

---

[13]  At the Joint Case Management Conference in these cases, the Court suggested staying the briefing on the motions to dismiss in the Antitrust Case until after the bench trial in the Breach of Contract Case. The parties, anxious to litigate both cases as quickly as possible, requested that the Court simultaneously (1) consider Ticketmaster's Rule 12(b)(6) motions to dismiss the Cavaliers/Flash Seats' claims and counterclaims and (2) conduct the bench trial in the Breach of Contract Case. With the benefit of hindsight, the Court probably should have adhered to its initial assessment of the best way to approach these cases procedurally.

The Court has reached its conclusions regarding the central liability issue in the Breach of Contract Case. Because the parties are about to enter into a new ticketing season, the Court finds it appropriate to inform the parties of the standards under which their actions are to be governed, even though it has not yet completed its written explanation for its conclusions. Simply, the Court finds in favor of Ticketmaster with respect to its breach of contract claims; the Cavaliers' use of Flash Seats' products and services constitutes a breach of the exclusivity clause of the LUA. The LUA prohibited (and continues to prohibit) the Cavaliers from contracting with Flash Seats to facilitate the resale of single-game tickets originally sold as part of a season ticket package.

The Court hereby authorizes discovery on the assessment of damages as a result of the breach of Ticketmaster's exclusive rights, to begin immediately. The deadline with respect to such discovery shall be 45 days from the issuance of the Court's opinion articulating its reasoning for finding in favor of Ticketmaster. Ticketmaster shall file a motion for an award of damages within 10 calendar days of the close of discovery. The Cavaliers shall file a response within 10 calendar days of the filing of Ticketmaster's motion for damages. The Court will schedule a bench trial regarding damages to occur shortly after the close of briefing; the parties will be notified of the damages-phase trial date in conjunction with the Court's findings of fact and conclusions of law.

In addition, the Court hereby **GRANTS** Ticketmaster's request for specific performance. (*See Second Amended Compl.*, ECF Doc. 129, Case No. 08cv240, at ¶ 47-52.) Until further notice, the Cavaliers are hereby enjoined from using Flash Seats' products and services to sell or resell Cavaliers tickets of any kind.[14]

---

[14] The Court recognizes that the Cavaliers/Flash Seats' antitrust claims challenge the enforceability of the exclusivity clause of the LUA as violative of the antitrust laws, and that that challenge remains unresolved. The Court is not, however, prepared to, *sua sponte*, grant the Cavaliers either a preliminary injunction in the

13

**Step 2.** **Issuance of Findings of Fact and Conclusions of Law**

A written opinion fully articulating the Court's reasoning with respect to its finding that the Cavaliers breached the LUA will issue shortly. For the purposes of this order, however, it is worth mentioning several of the pertinent factual findings that the Court will make. At the heart of the Court's decision is that section 5 of the LUA includes several provisions which, based on both their plain language and the surrounding circumstances, support Ticketmaster's interpretation of the scope of their exclusive rights. The language, and, especially, the circumstances surrounding the formation of the LUA, are relevant to the arguments the parties make in their briefing on the antitrust issues.[15] For example, among other things, the evidence presented at trial clearly established the following:

- Long-term exclusive ticketing contracts are the standard in the ticketing industry, and Ticketmaster views exclusivity as its most important contractual right.

- The LUA and its amendments were vigorously negotiated between the Cavaliers and Ticketmaster. Unrebutted testimony established that, prior to the execution of the Fourth Amendment to the LUA, the Cavaliers nearly terminated its relationship with Ticketmaster in favor of a rival ticketing company. The evidence revealed that the most recent extension of the LUA is the result of hard-bargaining by the Cavaliers that resulted in very favorable terms.

---

Antitrust Case or a stay of this order. The Court finds that in light of its conclusions regarding the operative effect of the LUA it is appropriate at this stage to return the parties to the *status quo ante* – *i.e.*, a relationship governed by a proper reading of the LUA. Any further alternation of that status could only occur if and when the Court invalidates the contract on antitrust grounds, or the Cavaliers move for, and bear the burden of convincing this Court that, interim relief is appropriate despite this Court's interpretation of the contract terms.

[15] While the Court is satisfied that these factual findings are relevant to its antitrust analysis, it reaches no conclusions at this point whether these, or other of its potential findings, are determinative of that analysis. In other words, the parties are cautioned not to read too much into the above factual recitation.

14

- The Cavaliers specifically requested a ticketing system that could provide both primary and secondary ticketing services in one bundled package.

- The Cavaliers receive more money for a ticket sold through Ticketmaster than one sold through the box office.

This is just some of the evidence presented in the course of the bench trial that arguably relates to the plausibility and strength of the Cavaliers/Flash Seats' antitrust claims (or at least those of one or the other of the antitrust plaintiffs).  This evidence is illustrative of why the Court cannot artificially separate its findings in the Breach of Contract Case from its evaluation of the antitrust claims and counterclaims.

### Step 3:  Procedure for Assessing the Cavaliers/Flash Seats Antitrust Claims and Counterclaims

As noted above, although the Court has conducted a painstaking analysis of the Cavaliers/Flash Seats' antitrust claims, it has struggled to assess the validity of those claims under the Rule 12(b)(6) standard with the knowledge of the evidence presented at the bench trial in the Breach of Contract Case.  After considering several methods of addressing this dilemma, the Court decided  that the approach articulated here – in particular, converting the motions to dismiss to ones for summary judgment – is the most appropriate and practical solution.  Some explanation of the Court's rationale for choosing this approach is warranted, however.

First, it is important to note that the Court may take judicial notice of the record of  the bench trial in assessing Ticketmaster's motion to dismiss the Cavaliers/Flash Seats' antitrust claims.  It is well-established that the court may take judicial notice of prior proceedings and the record in the case before it or closely related cases, even when assessing a later motion under Rule 12(b)(6).  *See e.g.*, *Saylor v. U.S.*, 315 F.3d 664, 668 (6th Cir. 2003) (citing *Shuttlesworth v. Birmingham*, 394 U.S. 147, n.6 (1969) for the proposition that the court may take judicial notice

15

of the record in a prior related case between the same parties); *Azizhakim v. White*, 966 F.2d 1451 (6th Cir. 1992) (unpublished) (citing *United States v. Doss*, 563 F.2d 265 (6th Cir. 1977)); *Scott v. Vanderbilt Mortg. & Fin., Inc.*, 2007 U.S. Dist. Lexis 59202, *2 n.2 (M.D. Tenn. Aug. 13, 2007) ("The Court may take judicial notice of prior pleadings and proceedings when considering a motion to dismiss for failure to state a claim. *See Charter Oak Fire Ins. Co. v. Broan Nutone, LLC*, 348 F. Supp. 2d 934, 937 (W.D. Tenn. 2004) (citing Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1364 (West 2004)"); *see also* 12 Fed. Proc. L. Ed. §33:69 (West 2008) ("Among the facts which have been the subject of judicial notice are court records, acts, and proceedings in the same federal case . . . ").

Second, Ticketmaster attached materials outside the pleadings to its supplemental brief. (ECF Doc. 86-3, Case No. 07cv2317.) Specifically, it attached the Cavaliers' 2004 Request for Proposal ("RFP") related to negotiating a new ticketing services contract, a copy of the schedule of events and presentations at a ticketing industry conference, and a copy of the official website of Major League Baseball. The RFP was presented and admitted in evidence as an exhibit at the bench trial. (Tr. Ex. TM-20.)

As a result of the evidence presented at the bench trial and the exhibits Ticketmaster attached to its supplemental briefing, the Court has now been presented with substantial materials outside the pleadings. This implicates Rule 12(d) of the Federal Rules of Civil Procedure, which generally mandates that the Court convert a Rule 12(b)(6) motion to a Rule 56 motion if it considers matters outside the pleadings.

> If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

16

Fed. R. Civ. P. 12(d). While there is a general exception to this rule when the Court takes judicial notice of materials outside the pleadings under Rule 201 of the Federal Rules of Evidence, *see e.g.*, *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (overruled on other grounds), it is fairly universally considered the better practice to put the parties on notice of the Court's decision to deviate from the face of the pleadings in a 12(b)(6) ruling. Thus, while the Court *could* consider the evidence presented at the bench trial in evaluating Ticketmaster's motion to dismiss under Rule 12(b)(6), it is less clear that it *should* do so, especially in a case which has been as hard fought and well-documented as this one.

Rule 12(d) specifically provides for notice to the parties in the event the Court decides to convert a Rule 12(b)(6) motion to a motion for summary judgment. This requirement is designed to avoid prejudice to one of the parties. *See Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 203-04 (6th Cir. 1998) (finding notice of conversion essential when conversion is a surprise to one party). Here, although the parties had a fair and equal opportunity to present evidence at the bench trial in the Breach of Contract Case, the evidence presented was directly relevant to that case, and only incidentally relevant to the antitrust claims. Nonetheless, it is clear that substantial evidence relevant to the antitrust allegations was presented. In fact, the evidence presented that is relevant to the antitrust claims is so substantial and intertwined that, as a practical matter, it is now impossible for the Court to evaluate the strength and plausibility of the antitrust pleadings on the pleadings alone. Under these circumstances, the Court concludes that, in anticipation of its forthcoming findings of fact and conclusions of law in the Breach of Contract Case and in the interest of fairness, it should convert Ticketmaster's motions to dismiss to a motion for summary judgment.

Accordingly, Ticketmaster's motions to dismiss under Rule 12(b)(6) are hereby **TERMED**. The Court will consider the motions under Rule 56 after (1) the opinion issues in connection with the bench trial in the Breach of Contract Case and (2) the parties have had an opportunity to conduct limited discovery and submit materials pertinent to the antitrust claims and counterclaims.[16] Upon the issuance of the bench trial opinion, the Court will schedule a prompt status conference to discuss and determine the parameters and timing of such discovery and submissions. The Court does not anticipate additional briefing on the legal issues presented by the motions to dismiss and will not entertain motions for reconsideration of either this Order or its ultimate contract liability rulings.

### III. CONCLUSION

For the foregoing reasons:

(1) The Court finds that the Cavaliers breached Ticketmaster's exclusive rights as set forth in the LUA. The Court hereby **ORDERS** discovery on the assessment of damages due to the breach of Ticketmaster's exclusive rights, to commence immediately and proceed in accordance with the schedule set forth above.

(2) The Court hereby **GRANTS** Ticketmaster's request for specific performance of the LUA. (*See* ECF Doc. 129, Case No. 08cv240, *2d Amended Compl*. ¶ 47-52.) **The Cavaliers are hereby enjoined from using Flash Seats' products and services to sell or resell Cavaliers**

---

[16] In establishing this procedure, the Court is cognizant of the concern at the heart of *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1966-67 (2007) regarding the often unusually burdensome nature of antitrust discovery. The parties should expect the Court to limit the scope of discovery with this aspect of *Twombly* in mind. One of the benefits of this procedure, however, is that it allows the parties to avoid duplicative discovery in light of the bench trial, but permits them to conduct some additional discovery narrowly tailored to the antitrust claims and counterclaims.

18

**tickets of any kind.** This is not a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, it is a permanent one premised on the Court's liability determinations in the Breach of Contract Case. The burden of seeking a stay of this Order, or a preliminary injunction for the remainder of its Antitrust Case, and attendant burdens of proof and persuasion, accordingly, would be upon the Cavaliers/Flash Seats.

(3) Ticketmaster's *Motion to Dismiss Counts I Through V of the Amended Complaint* in case number 07cv2317 (ECF Doc. 25, Case No. 07cv2317), and Ticketmaster's *Motion to Dismiss Counterclaims* in case number 08cv240 (ECF Doc. 105, Case No. 08cv240) are hereby **TERMED** and **CONVERTED** to motions for summary judgment under Rule 56. The procedure for evaluating Ticketmaster's challenge to the Cavaliers/Flash Seats' claims and counterclaims will be established following the issuance of the Court's opinion in connection with the bench trial in the Breach of Contract Case.

**IT IS SO ORDERED.**

                                                 **s/Kathleen M. O'Malley**
                                                 **KATHLEEN McDONALD O'MALLEY**
**Dated:**     **September 30, 2008**     **UNITED STATES DISTRICT JUDGE**